

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
10/30/2015

| | | |
|---|---|---|
| IN RE: | § | |
| ANH VAN DANG; aka DANG | § | CASE NO: 14-36791 |
|     Debtor | § | |
| | § | CHAPTER 7 |
| IN RE: | § | |
| HONG BICH CHAU | § | CASE NO: 14-36790 |
|     Debtor | § | |
| | § | CHAPTER 7 |
| | § | |
| | § | |
| TREVOR GILBERT, *et al* | § | |
|     Plaintiffs | § | |
| | § | |
| VS. | § | ADVERSARY NO. 15-03089 |
| | § | |
| ANH VAN DANG | § | |
|     Defendant | § | |
| | § | |
| TREVOR GILBERT, *et al* | § | |
|     Plaintiffs | § | |
| | § | |
| VS. | § | ADVERSARY NO. 15-03088 |
| | § | |
| HONG BICH CHAU | § | |
|     Defendant | § | |
| | § | |

## MEMORANDUM OPINION ON THE PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT [1]

    The Court writes this Memorandum Opinion because it concerns a thorny area of the law:

namely, under what limited conditions collateral estoppel applies in a § 523(a) action when the

jury in the prior state court lawsuit has issued alternative determinations as to the basis for

liability.  For the reasons set forth herein, the Court concludes that collateral estoppel applies in

---

[1] The Plaintiffs filed two separate adversary proceedings: one against Anh Van Dang in his Chapter 7 case (Case No. 14-36791); and one against Hong Bich Chau in her Chapter 7 case (Case No. 14-36790).  The factual allegations, asserted claims, and relief requested in each adversary proceeding are exactly the same.  Accordingly, this Memorandum Opinion relates to both of these adversary proceedings.

the suit at bar and that the Plaintiffs are entitled to a summary judgment declaring that the judgment they obtained in a prior state court suit is nondischargeable.

## I.    Factual and Procedural Background

On September 17, 2011, Trevor and Jorja Gilbert (the "Plaintiffs") filed suit against Debtor Anh Van Dang ("Dang"), his girlfriend Hong Bich Chau ("Chau"), and several other non-debtor parties in the 334th Judicial District Court, Harris County, Texas ("the State Court Lawsuit"). [Adv. Doc. No. 13, Ex. 2, p. 2]. Chau and Dang (collectively defined as "the Debtors") lived together in a house located in Houston, Texas ("the House"). [Id.]. On October 2, 2009, the Plaintiffs purchased the House from the Debtors for total consideration of $145,000.00. After beginning remodeling work, the Plaintiffs discovered significant mold and water damage in several rooms of the House. In the State Court Lawsuit, the Plaintiffs alleged that: (1) the House suffered from severe water damage stemming from several burst pipes and rising water caused by a 2009 rainstorm, [Adv. Doc. No. 13, p. 3]; (2) the Debtors failed to disclose that they had made four insurance claims relating to the water damage, received approximately $54,000.00 in insurance proceeds, and did not utilize the proceeds to conduct needed repairs, [Adv. Doc. No. 13, Ex. 2, p. 3]; and (3) when the Debtors originally purchased the House, they demanded that the seller repair minor water and mold damage, a fact which they did not disclose to the Plaintiffs, [Adv. Doc. No. 13, Ex. 2, p. 3].

In the State Court Lawsuit, the Plaintiffs sued for violations of the Texas Deceptive Trade Practices Act ("DTPA"), fraud, and conspiracy. Following a week-long trial, the Plaintiffs obtained a favorable jury verdict. The jury charge contained the following relevant questions:

## QUESTION NO. 1

Did any of the persons named below engage in any false, misleading, or deceptive act or practice that Trevor and Jorja Gilbert relied on to their detriment and that was a producing cause of damages to them?

> **"Producing cause"** means a cause that was a substantial factor in bringing about the damages, if any, and without which the damages would not have occurred. There may be more than one producing cause.

> **"False, misleading, or deceptive act or practice"** means any of the following:

>> 1. Representing that real estate had or would have characteristics that it did not have; or

>> 2. Representing that real estate is or will be of a particular quality if it was of another; or

>> 3. Failing to disclose information about real estate that was known at the time of the transaction with the intention to induce the Trevor and Jorja Gilbert into a transaction they otherwise would not have entered into if the information had been disclosed.

Answer "Yes" or "No" for each of the following:

a. Ahn Van Dang
   Answer: _____Yes_____
b. Hong Bich Chau
   Answer: _____Yes_____
c. Chi Truc Hoang
   Answer: _____NO_____

## QUESTION NO. 2

Did any of the persons named below engage in any unconscionable action or course of action that was a producing cause of damages, if any, to Trevor and Jorja Gilbert?

> **"An unconscionable action or course of action"** is an act or practice that, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.

Answer "Yes" or "No" for each of the following:

a. Ahn Van Dang
   Answer: _____Yes_____
b. Hong Bich Chau
   Answer: _____Yes_____
c. Chi Truc Hoang
   Answer: _____NO_____

*Answer Question No. 3 for any of the persons named below only if you answered "Yes" with respect to that person in either Question No. 1 or Question No. 2. Otherwise, do not answer the following question.*

## QUESTION NO. 3

Did any of the persons named below engage in the conduct that you found in response to Question Nos. 1 or 2, above, knowingly or intentionally?

> **"Knowingly"** means actual awareness, at the time of the conduct, of the falsity, deception, or unfairness of the conduct in question. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

> **"Intentionally"** means actual awareness of the falsity, deception, or unfairness of the conduct in question, coupled with the specific intent that the consumer act in detrimental reliance on the falsity or deception. Specific intent may be inferred where objective manifestations indicate that a person acted intentionally, or may be inferred from facts showing that the person acted with such flagrant disregard of prudent and fair business practices that the person should be treated as having acted intentionally.

In answering this question, consider only the conduct that you have found was a producing cause of damages to Trevor and Jorja Gilbert.

Answer "Yes" or "No" for each of the following persons, if and as applicable:

|   |   | **Knowingly** | **Intentionally** |
|---|---|---|---|
| a. | Ahn Van Dang | Answer: _Yes_ | Answer: _Yes_ |
| b. | Hong Bich Chau | Answer: _Yes_ | Answer: _Yes_ |
| c. | Chi Truc Hoang | Answer: _N/A_ | Answer: _N/A_ |

## QUESTION NO. 4

Did any of the persons named below commit fraud against Trevor and Jorja Gilbert?

You are instructed that fraud occurs when –

a. a person voluntarily discloses partial information but fails to disclose the whole truth, or makes a partial disclosure and conveys a false impression;

b. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth;

c. the party intends to induce the other party to take some action by failing to disclose the fact; and

d. the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

You are further instructed that fraud also occurs when –

a. a party makes a material misrepresentation;

b. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion;

c. the misrepresentation is made with the intention that it should be acted on by the other party; and

d. the other party relies on the misrepresentation and thereby suffers injury.



**"Misrepresentation"** means a false statement of fact.

Answer "Yes" or "No" for each of the following:

a. Ahn Van Dang

Answer: _Yes_

b. Hong Bich Chau

Answer: _Yes_

c. Chi Truc Hoang

Answer: _NO_

### QUESTION NO. 5

Did any of the persons named below commit statutory fraud against Trevor and Jorja Gilbert?

You are instructed that statutory fraud occurs when –

    a.  there is a false representation of a past or existing material fact;

    b.  the false representation is made to a person for the purpose of inducing that person to enter into a contract, and;

    c.  the false representation is relied on by that person in entering into that contract.

Answer "Yes" or "No" for each of the following:

    a.  Ahn Van Dang

        Answer: ___*Yes*___

    b.  Hong Bich Chau

        Answer: ___*Yes*___

    c.  Chi Truc Hoang

        Answer: ___*NO*___

If your answer to Question Nos. 1, 2, 4 or 5 was "Yes" for any party, then answer the following question. Otherwise, do not answer the following question.

### QUESTION NO. 7

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Trevor and Jorja Gilbert for their damages, if any, that resulted from such conduct?

[Adv. Doc. No. 13, ex. 4, pp. 3-9]. Notably, Question 7 required the jury to assess damages based on *either* Questions 1, 2, 3, 4 *or* 5. The jury awarded the Plaintiffs $150,000.00 to repair the House, $54,000.00 to compensate for loss of use of the House, $200,000.00 in past mental anguish, and $80,000.00 for mental anguish in the future. [*Id.* at pp. 9-10]. It awarded an additional $900,000.00 "because the conduct was committed knowingly." [*Id.* at pp. 11, 14]. Finally, the jury awarded attorney's fees in the amount of $205,000.00. [*Id.*].

After the jury awarded the Plaintiffs the above-referenced damages, but before the state court could enter a final judgment, the Debtors filed separate Chapter 7 petitions. [Case No. 14-36791, Doc. No. 1; Case. No. 14-36790, Doc. No. 1]. The filing date for the two petitions was December 9, 2014. The Plaintiffs thereafter filed a Motion for Relief from Stay for Entry of Final Judgment in each of these cases. [Case No. 14-36791, Doc. No. 14; Case No. 14-36790, Doc. No. 20]. This Court granted the Plaintiffs' motions on March 13, 2015 and March 31, 2015, respectively. [Case No. 14-36791, Doc. No. 22; Case. No. 14-36790, Doc. No. 46]. The Plaintiffs thereafter sought entry of a final judgment in the State Court Lawsuit.

On July 16, 2015, the state court entered final judgment against the Debtors (the "Final Judgment"). [Adv. Doc. No. 13, Ex. 5]. The Final Judgment ordered that the Plaintiffs recover from the Debtors damages of $1,384,000.00, plus attorney's fees of $205,000.00, for "knowing and intentional violations of the Texas Deceptive Trade Practices Act." [*Id.*]. The Final Judgment sets forth that pre-judgment interest on $404,000.00 in past compensatory damages will accrue at 5% per annum, and that post-judgment interest on the overall outstanding amount will also accrue at 5%.

The Plaintiffs now request this Court to issue an order that the Final Judgment is a nondischargeable debt for which the Debtors remain personally liable. The Plaintiffs timely initiated suit in this Court on March 16, 2015, by commencing separate adversary proceedings against Dang and Chau objecting to the discharge of the Final Judgment pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). [Adv. No. 15-03089, Doc. No. 1; Adv. No. 15-03088, Doc. No. 1]. The Debtors timely filed their respective answers on April 17, 2015. [Adv. No. 15-03089, Doc. No. 9; Adv. No. 15-03088, Doc. No. 8]. The Plaintiffs then filed motions for summary judgment in both adversary proceedings on August 14, 2015. [Adv. No. 15-03089, Doc. No. 13; Adv. No.

15-03088, Doc. No. 11]. Dang and Chau responded on September 3, 2015. [Adv. No. 15-03089, Doc. No. 14;Adv. No. 15-03088, Doc. No. 13]. The Court heard oral arguments on October 2, 2015, and then took the matter under advisement. After considering the legal authorities and arguments of counsel, the Court now issues this ruling.

## II.    Conclusions of Law

### A.  Jurisdiction

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1334(b), which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012-6 (entitled "General Order of Reference") automatically refers all eligible cases and proceedings to this Bankruptcy Court.

The phrase "arising in" a case under title 11 refers to proceedings that "would have no existence outside of the bankruptcy." *Matter of Wood*, 825 F.2d 90, 96 (5th Cir. 1987). The adversary proceedings at bar involve a determination as to whether the Final Judgment is a nondischargeable debt under 11 U.S.C. § 523(a); therefore, these suits would have no existence outside of the Debtors' Chapter 7 cases. Consequently, the dispute between the Plaintiffs and the Debtors is within the jurisdiction of the District Court pursuant to 28 U.S.C. § 1334(b) and has been referred to this Bankruptcy Court under General Order 2012-6.

### B.  Venue

Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## C. *Constitutional Authority to Enter a Final Order*

In the wake of the Supreme Court's issuance of *Stern v. Marshall*, 131 S. Ct. 2594 (2011), this Court is required to determine whether it has the constitutional authority to enter a final order in any dispute brought before it. In *Stern*, which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620. The pending dispute before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Because *Stern* is replete with language emphasizing that the ruling is limited to the one specific type of core proceeding involved in that dispute, this Court concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order here. A core proceeding under § 157(b)(2)(I) is entirely different than a core proceeding under § 157(b)(2)(C). *See, e.g.*, *Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547–48 (8th Cir. B.A.P. 2012) ("Unless and until the Supreme Court visits other provisions of § 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also In re Davis*, 538 F. App'x 440, 443 (5th Cir. 2013) *cert. denied sub nom. Tanguy v. W.*, 134 S. Ct. 1002 (2014) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect.' . . . We decline to extend *Stern*'s limited holding herein.").

Alternatively, even if *Stern* applies to all of the categories of core proceedings brought under § 157(b)(2), *see In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 294 n.12 (5th Cir. 2013) ("*Stern*'s 'in one isolated respect' language may understate the totality of the

encroachment upon the Judicial Branch posed by § 157(b)(2) . . ."), this Court still concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order in the dispute at bar. In *Stern*, the debtor filed a counterclaim based *solely* on state law; whereas, here, the Plaintiffs' request for this Court to rule that the Final Judgment is a nondischargeable debt is based on an express Bankruptcy Code provision—i.e. § 523(a)—and judicially-created bankruptcy law interpreting this provision. Granted, for this Court to determine whether the Final Judgment is nondischargeable does involve some state law, as this Court must apply the principles of collateral estoppel under Texas law; nevertheless, the need to apply Texas law in this § 523(a) suit does not deprive this Court of the constitutional authority to enter a final order in this dispute because the very basis of the suit is a specific provision of the Bankruptcy Code (i.e. § 523(a)). *In re Muhs*, No. 09-10564, 2011 WL 3421546, at *2 (Bankr. S.D. Tex. Aug. 2, 2011).

Finally, in the alternative, this Court has the constitutional authority to enter a final order because all of the parties at bar have consented, impliedly if not explicitly, to adjudication of this dispute by this Court. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947 (2015) ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be expressed. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent. . . ."). The Debtors each filed Chapter 7 petitions shortly after the jury verdict, clearly anticipating that nondischargeability proceedings would be filed in bankruptcy court; the Plaintiffs then filed their adversary proceedings, and neither Dang nor Chau have ever given any indication that they object to this Court's authority to issue a final order regarding dischargeability. Indeed, the Debtors have each filed answers to the original

complaints and also filed responses opposing the motions for summary judgment. In these pleadings, neither Dang nor Chau have objected to this Court's authority to enter a final order. For their part, the Plaintiffs have not lodged any objections either. Under all of these circumstances, this Court concludes that all of the parties have consented to this Court entering a final order as to whether the Final Judgment is a nondischargeable debt.

### D. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings. A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *City & Cnty. of S. F., Cal. v. Sheehan*, 135 S.Ct. 1765, 1769 (2015). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the

record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[2]  Fed. R. Civ. P. 56(c)(1).  The Court need consider only the cited materials, but it may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  The Court should not weigh the evidence.  A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).

In the dispute at bar, the Plaintiffs' primary evidence are two documents: (1) the jury charge; and (2) the Final Judgment. [Adv. No. 15-03089, Doc. No. 13].  The Debtors do not object to the admissibility of these items. [Adv. No. 15-03088, Doc. No. 14, p. 3 of 12; Adv. No. 15-03089, Doc. No. 15].  In her response opposing the Motion for Summary Judgment, Chau attaches one piece of evidence: a brief affidavit which summarily sets forth that "I did not intend to mislead or falsify any information regarding the sale of the Property to the Gilberts." [Adv. No. 15-03088, Doc. No. 13-1].  Additionally, Chau's affidavit sets forth that "I do not speak or read the English language fluently and must rely on others to interpret for [me] and I did so rely on the real estate broker when I completed the disclosure requirements on the sale of the Property to the Gilberts." [*Id.*].  In his response opposing the Motion for Summary Judgment, Dang attaches two pieces of evidence: (1) Chau's affidavit; and (2) his own affidavit, which summarily sets forth that "I did not intend to mislead or falsify any information regarding the sale of the Property to the Gilberts." [Adv. No. 15-03089, Doc. No. 14-1; Adv. 15-03088, Doc.

---

[2] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

No. 13]. The Plaintiffs do not object to the admissibility of these affidavits, but simply contend that they do not establish that there is any genuine dispute as to any material fact because the jury already found that they did mislead or falsify information; and therefore, they are now collaterally estopped from contending otherwise.

    E.  *Analysis of the Plaintiffs' Motion for Summary Judgment Requesting an Order Declaring that the Final Judgment is Nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6)*

The central purpose of a bankruptcy discharge is to provide a debtor with a fresh start "unhampered by the pressure and discouragement of existing debt." *Grogan v. Garner*, 489 U.S. 279, 286 (1991). There are several debts, however, that are excepted from discharge for public policy reasons. *Winn v. Holdaway (In re Holdaway)*, 388 B.R. 767, 772 (Bankr. S.D. Tex. 2008). These exceptions have been codified in 11 U.S.C. § 523(a). "The various exceptions to discharge in § 523(a) reflect a conclusion on the part of Congress that the creditor's interest in recovering full payment of debts in these categories outweighs the debtor's interest in a complete fresh start." *Cohen v. de la Cruz*, 523 U.S. 213, 222 (1998) (quoting *Grogan*, 498 U.S. at 287).

The Plaintiffs request this Court to issue an order that the Final Judgment owed by the Debtors is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). For the reasons set forth below, the Court concludes that the Plaintiffs should not be granted summary judgment on their § 523(a)(6) claim, but should be granted summary judgment on their § 523(a)(2)(A) claim.

    **1.  Summary Judgment is Denied With Respect to the Plaintiffs' Claim that the Final Judgment is Nondischargeable Under 11 U.S.C. § 523(a)(6)**

Section 523(a)(6) exempts debts from discharge which were obtained by "willful and malicious injury by the debtor to another entity or to the property of another entity." Here, summary judgment based on 11 U.S.C. § 523(a)(6) must be denied because the jury never made

a finding that Dang or Chau acted with willful or malicious conduct.  Although Question No. 15 of the jury charge asked if the Plaintiffs' injury resulted from "malice" on the part of the Debtors, the jury did not answer the question.  Without an express finding that the conduct of the Debtors was "willful and malicious," the Plaintiffs are not entitled to summary judgment on their § 523(a)(6) claim. As noted above, the Plaintiffs bear the burden of showing that there is no genuine dispute as to any material fact, and this Court must construe the facts and evidence in the light most favorable to the Debtors (because they are the nonmoving parties). Because the jury made no express finding that the Debtors' conduct was "willful and malicious" and because the Plaintiffs have provided no other evidence to prove that the Debtors' conduct was "willful and malicious," this Court, construing these circumstances in the light most favorable to the Debtors, finds that the Plaintiffs have failed to meet their burden of establishing that there is no genuine dispute as to any material fact with respect to their § 523(a)(6) claim. Stated differently, the Court finds that there is indeed a genuine dispute as to two material facts on this particular claim: (1) Was the conduct of the Debtors "willful"?; and (2) Was the conduct of the Debtors "malicious"?

**2. Summary Judgment is Granted With Respect to the Plaintiffs' Claim that the Final Judgment Is Nondischargeable Under 11 U.S.C. § 523(a)(2)(A)**

a. Review of the Elements Necessary to Prevail Under a § 523(a)(2)(A) Claim

Section 523(a)(2)(A) exempts from discharge any debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement representing the debtor's or an insider's financial condition."  The operative terms in § 523(a)(2)(A) —i.e., false pretenses, a false representation, or actual fraud—"carry the acquired meaning of terms of art . . . [and] are common-law terms." *AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 402 (5th Cir. 2001) (quoting *Field v. Mans*, 516 U.S. 59, 69 (1995)).

The Fifth Circuit has applied "different, but somewhat overlapping, elements of proof for § 523(a)(2)(A) actual fraud, as opposed to false pretenses/representation." *Mercer*, 246 F.3d at 403. A false representation or pretense requires a knowing and fraudulent falsehood that describes past or current facts and is relied upon by the other party. *Holdaway*, 388 B.R. at 772 (citing *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992)). False representations and false pretenses must encompass statements that falsely purport to depict past or current facts. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995). Actual fraud requires a creditor to prove that: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representation with the intention and purpose to deceive the creditor; (4) the creditor relied on such representations; and (5) the creditor sustained losses as a proximate result of the representations." *Holdaway*, 388 B.R. at 772 (citing *RecoverEdge*, 44 F.3d at 1293).

b. Analysis of the Plaintiffs' Argument that the Doctrine of Collateral Estoppel Establishes All of the Elements of their §523(a)(2)(A) Claim

Given the jury findings, the Plaintiffs argue that the Debtors are estopped from challenging the non-dischargeability of the Final Judgment. It is black letter law that collateral estoppel is applicable in bankruptcy dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 287 (1991). When determining the preclusive effect of a state court judgment, a bankruptcy court must look to the applicable rules of preclusion from the state where judgment was rendered. *Plunk v. Yaquinto (In re Plunk)*, 481 F.3d 302, 307 (5th Cir. 2007). In Texas, in order to invoke collateral estoppel a party must establish that: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action."

*Mann v. Old Republic Nat. Title Ins. Co.*, 975 S.W.2d 347, 350 (Tex. App.—Houston 1998, no pet.).

As discussed above, the jury found that the Debtors committed a "False or Deceptive Act," (Question No. 1); an "Unconscionable Action," (Question No. 2); "Fraud" (Question No. 4); and "Statutory Fraud" (Question No. 5). Given the jury's explicit finding of fraud, it would appear, at first glance, that the Final Judgment would be nondischargeable under 11 U.S.C. § 523(a)(2)(A). However, the jury charge was regrettably vague as to the actual source of the damages. Question No. 7 asked "If your answer to Question Nos. 1, 2, 4, **or** 5 was "Yes" for any party, then . . . [w]hat sum of money, if any, if paid now in cash, would fairly and reasonably compensate Trevor and Jorja Gilbert for their damages. . . ." Because the damages were not segregated between each question, the jury verdict is not conclusive as to how the jury intended to allocate those damages. For example, did the jury intend to award all of the damages due to Debtors' fraud, in which event the Final Judgment would be nondischargeable? Or, did the jury intend to award all of the damages due to Debtors' unconscionable conduct, in which event the Final Judgment would be dischargeable?[3]

Texas has incorporated the Restatement (Second) of Judgments § 27 cmt. i., which provides that "[i]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 722 (Tex. 1990). The rationale for preventing an alternative finding from having a preclusive effect on litigation "is that a determination in the alternative may not have been as rigorously considered as it would have been if necessary to the result, and

---

[3] Unconscionable conduct, although improper, nevertheless does not rise to the level of bad conduct required under § 523(a)(2)(A) to render the Final Judgment nondischargeable. *See Ragupathi v. Barrington*, 183 B.R. 754, 761 (Bankr. W.D. Tex. 1995).

the losing party may be dissuaded from appealing one determination because of the likelihood that the other will be upheld.  *Id.*  Based upon these legal authorities, the Debtors argue that: (1) because the damage award was predicated on alternate findings, i.e., Questions 1, 2, 3, 4, **or** 5 of the jury charge, collateral estoppel may not be applied with regard to the issue of damages; and (2) therefore, this Court must hold a full evidentiary trial to determine how much of the Final Judgment, if any, is nondischargeable.

The Debtors' argument might carry the day if the Final Judgment simply contained a generic recitation incorporating all of the jury's findings. But here, the Final Judgment is quite specific. While it incorporates all of the jury findings by reference, it explicitly states that the Debtors are liable for "knowing and intentional violations of the Texas Deceptive Trade Practices Act ("DTPA") the sum of $1,384,000.00, plus attorney's fees. . . ."  This language leaves no doubt that the Final Judgment allocated the Plaintiffs' *entire* award only to the DTPA claim.  Therefore, the Court now focuses on whether the jury's findings on the DTPA issues satisfy the elements required under § 523(a)(2)(A) such that collateral estoppel applies.[4]

    c. Review of the DTPA Provisions that are Applicable to the Dispute at Bar.

The DTPA, in pertinent part, provides that:

(a) A consumer may maintain an action where any of the following constitute a
    producing cause of economic damages or damages for mental anguish:

---

[4] It is truly ironic that the Final Judgment does *not* expressly allocate the $1,384,000.00 to the jury's findings of fraud for questions No. 4 and No. 5. Indeed, one could argue that if the *Plaintiffs'* attorney, at the time he was requesting that state court judge to submit the charge to the jury, had considered whether the Debtors would file for bankruptcy if the Plaintiffs prevailed in state court, the attorney would only have submitted Questions No. 4 and No. 5 to the jury. Had this attorney done so, collateral estoppel would unquestionably apply, as the jury's findings in Question No. 4 and No. 5 satisfy the elements of § 523(a)(2)(A). Of course, the Plaintiffs' counsel assuredly had legitimate reasons for requesting the state court judge to submit the other issues to the jury, so this footnote should not be construed as a criticism of the strategy that Plaintiffs' counsel chose. The dispute at bar underscores, however, the need for every plaintiff's attorney, when requesting the trial court judge to submit certain issues to a jury, to consider the possibility that: (1) the defendant—if the jury findings result in a judgment against him—will subsequently file a bankruptcy petition to obtain a discharge of the judgment debt; and (2) in order to obtain a ruling that the judgment is a nondischargeable debt it may be necessary to retry the entire suit in bankruptcy court if the judgment is based on determinations of two issues, either of which standing alone would be sufficient to support the result.

(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:

(A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and

(B) relied on by a consumer to the consumer's detriment;

. . .

(3) any unconscionable action or course of action by any person. . . .

Tex. Bus. & Com. Code § 17.50.

Subsection (b) of § 17.46 contains a "laundry list" of DTPA violations, of which the following provisions are relevant here:

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;

. . .

(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

. . .

(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

Tex. Bus. & Com. Code § 17.46. Question No. 1 of the jury charge clearly tracks these three specific laundry list violations.

A knowing and intentional violation of these three DTPA violations can give rise to non-dischargeability under § 523(a)(2)(A) under certain circumstances. *See Wilson v. Ramirez*, 2012 WL 5360963, at *9 (Bankr. S.D. Tex. Oct. 31, 2012) ("The uncontroverted summary judgment evidence establishes each of the elements of a knowing and intentional violation of the DTPA which evidence, in turn, satisfies each of the elements necessary to render Wilson's DTPA claim non-dischargeable under 11 U.S.C. § 523(a)(2)(A)."); *In re Carroll*, 464 B.R. 293, 332 (Bankr. N.D. Tex. 2011). Here, Questions No. 1 and No. 3 of the jury charge meet the elements of a §

523(a)(2)(A) claim, i.e., that (i) the Debtors made a representation about the House;[5] (ii) they knew the representation was false; (iii) they made the representation with the intention to deceive the Plaintiffs; (iv) the Plaintiffs actually and justifiably relied on the representation; and (v) the Plaintiffs sustained losses as a proximate result of his reliance. *See Carroll*, 464 B.R. at 331. Specifically, the Debtors knowingly and intentionally represented that the House either had characteristics it did not have, or that it was of a particular quality when it was of another, or they failed to disclose information about the House with the intention to deceive the Plaintiffs;[6] and the Plaintiffs relied on these representations to their detriment. [Adv. Doc. 13, Ex. 4, pp. 3, 5].

The Debtors are correct that the jury charge is not conclusive as to exactly which DTPA provision the Debtors violated. Question No. 3 reads, in part, "Did any of the persons named below engage in the conduct that you found in response to Question Nos. 1 **or** 2, above, knowingly or intentionally?" [Adv. Doc. 13, Ex. 4, p. 5]. Question No. 2 refers to "an unconscionable action or course of action," *which is itself a violation* under § 17.50(a)(3) of the DTPA. But, unlike the previously discussed laundry list violations of § 17.46(b), which closely resemble a traditional fraud claim, an unconscionable course of action does *not* satisfy the elements of § 523(a)(2)(A). *See Barrington*, 183 B.R. at 761. Taken together, the jury charge and the Final Judgment establish that the Debtors committed either a violation of § 17.46(b)(5), (7), or (24) or § 17.50(a)(3) of the DTPA—or some combination thereof. Pursuant to the general

---

[5] Question No. 1 refers to "real estate." For purposes of this Memorandum Opinion, the Court chooses to use the word "House" rather than "real estate."

[6] In the case of the § 17.46(24) violation, the Defendants committed fraud by nondisclosure. "It is well settled that silence can create a false impression, providing the basis for misrepresentation that is actionable under § 523(a)(2)(A)." *In re Ritz*, 513 B.R. 510, 519 (S.D. Tex. 2014) (quoting *In re Demarest*, 176 B.R. 917, 920 (Bankr. W.D. Wash. 2014), *aff'd* 787 F.3d 312 (5th Cir. 2015). The key inquiry in denying discharge based on silence is whether the debtor had a duty to disclose. *Ritz*, 513 B.R. at 519. A seller of real estate is under a duty to disclose those material facts which would not be discoverable by the buyer in the exercise of ordinary care and due diligence. *Pairett v. Gutierrez*, 969 S.W.2d 512, 515 (Tex. App.—Austin 1998, pet. denied). The Debtors had a duty to disclose hidden water and mold damage to the House which the Plaintiffs only discovered after they began remodeling the House.

rule set forth in the Restatement (Second) of Judgments, the Final Judgment is not conclusive as to which of these four DTPA provisions has resulted in the imposition of the $1,384,000.00 obligation and $205,000.00 in attorney's fees awarded by the jury.  It would appear, then, that the alternative determinations present in the jury charge and the Final Judgment would prevent the application of collateral estoppel to this dischargeability dispute pending before this Court.

> d. Although the General Rule is that a Judgment Based on Determination of Two Issues is Not Conclusive with Respect to Either Issue Standing Alone, There is an Exception to This General Rule, and It Applies in the Dispute at Bar.

"[T]he mere fact that the state court judgment includes alternative determinations does not necessarily establish that the [fraud] determination was not essential to the judgment." *Spillers v. Webb*, 979 F.Supp. 494, 500 (S.D. Tex. 1997). In fact, the Texas Supreme Court has acknowledged that "the abandonment of estoppel for the reason that a prior judgment rests on multiple grounds is inconsistent with the general rule in federal courts that a party is only entitled to one full and fair opportunity to litigate an issue." *Eagle Properties*, 807 S.W.2d at 722 (citing 1B *Moore's Federal Practice* ¶ 0.443 [5.–2] (1988)).  Moreover, Comment i to the Restatement makes clear that barring collateral estoppel due to alternative determinations by the court of first instance is ultimately an issue of fairness.   While it advocates for a uniform rule of nonpreclusion, the Restatement recognizes that "[t]here might be causes where, despite these considerations, the balance tips in favor of preclusion because of the fullness with which the issue was litigated and decided in the first action."  Restatement (Second) of Judgments § 27 cmt. i (1982).

The Texas Supreme Court has recognized such an exception where the court of first instance "rigorously considered" the issue to be precluded. In *Eagle Properties*, the defendants asserted collateral estoppel based on the first court's previous findings that the defendants had

not fraudulently induced Eagle into executing certain promissory notes. 807 S.W.2d at 722.

However, the first court had also found that one of the parties had a defense to any fraud claims

because of its lack of actual knowledge. The Texas Supreme Court nevertheless held that:

> While this alternative reasoning may have had some adverse effect on defendants'
> desire to appeal the judgment, it is clear that the [trial] court "rigorously
> considered" defendants' claims of fraudulent inducement, carefully reviewing
> each contention. Therefore, applying state law to the circumstances of this case,
> we hold that the defendants' claims of fraudulent inducement were "actually tried"
> in the federal court and that the court's findings on fraudulent inducement were
> "essential" to its judgment for the purposes of preclusion by collateral estoppel.

*Id.* The Fifth Circuit has also specifically recognized that an exception to the general rule exists

when the alternate holding was "rigorously considered." *Williams v. House Depot USA, Inc. (In*

*re West Hills Park Joint Venture)*, 587 Fed. Appx. 89, 92 n. 2 (5th Cir. 2014).

Here, it is equally apparent that the jury and state trial court "rigorously considered" the

issue of fraud as defined by 11 U.S.C. § 523(a)(2)(A). There can be no doubt that the jury,

following a week-long trial, found that the Debtors, knowingly and intentionally, made a

material misrepresentation which the Plaintiffs relied upon to their detriment. Moreover, keeping

in mind that barring collateral estoppel due to an alternative determination is ultimately an issue

of fairness, it is important to note that the Plaintiffs did not make a jury demand in the state court

suit. [Adv. Doc. No. 15-03088, Doc. No. 13, Ex. 2]. Rather, the Debtors demanded a jury trial.

[Adv. Doc. No. 15-03088, Doc. No. 1, Ex. 1]. Now, clearly unhappy with the findings of the

very jury which they demanded, the Debtors are now attempting to upset the jury's findings by

requesting this Court to hold a full evidentiary trial in the hope of adducing testimony and

introducing exhibits to convince this Court that the Final Judgment resulted solely from their

unconscionable conduct under § 17.50 of the DTPA—therefore rendering the entire Final

Judgment to be a dischargeable debt because unconscionable behavior does not come within the

conduct of § 523(a)(2)(A).  [Adv. Doc. No. 13, Ex. 10, p. 2]. *See Barrington*, 183 B.R. at 761.

By taking this course of action, the Debtors necessarily request this Court to completely

disregard the jury's finding that they violated § 17.46(b)(5), (7) and (24) of the DTPA—which is

conduct that does fall within § 523(a)(2)(A) and does render the obligation in the Final Judgment

nondischargeable. *Carroll*, 464 B.R. at 332. To hold a trial in this Court would be giving the

Debtors the classic "second bite of the apple." Stated differently, to refuse to apply collateral

estoppel would fly in the face of this principle's "dual purpose of protecting litigants from the

burden of relitigating an identical issue with the same party or his privy and of promoting

judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S.

322, 338 (1979); *see also Sysco Food Serv., Inc. v. Trapnell*, 890 S.W.2d 796, 806 (Tex. 1994)

(stating that a primary purpose of collateral estoppel is to promote judicial efficiency and prevent

multiple findings).

     *In re Schwager*, the principal case relied upon by the Debtors, involved *only two* alternate

findings; one for breach of fiduciary duties and the other for breach of a partnership agreement.

*Schwager v. Fallas (In re Schwager)*, 121 F.3d 177 (5th Cir. 1997).  Because one finding would

lead to nondischargeability and the other would not, the Fifth Circuit held that collateral estoppel

could not apply. By contrast, the suit at bar does not involve just two alternative findings.

Instead, the jury gave an affirmative answer to three questions which satisfy the elements of §

523(a)(2)(A)— Question No. 1 contains three subquestions, *all of which would lead to*

*nondischargeability*—versus only a single question outside the realm of § 523 (i.e. Question No.

2 about an unconscionable action, which would not produce a finding of nondischargeability).

Even the text of the Restatement itself implies that Comment i should not apply in such a

scenario: "If a judgment of a court of first instance is based on determinations *of two issues* [as

opposed to the several issues in the suit at bar], either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." Restatement (Second) of Judgments § 27 cmt. i (1982) (emphasis added).

In the dispute at bar, the summary judgment record indicates that the jury, after a week-long trial, rigorously considered four claims under the DTPA, three of which would result in nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A). Notwithstanding the alternative finding contained within Question No. 2 of the jury charge, this Court will not disregard the jury's clear findings of fraud under § 17.46 of the DTPA. The finding of fraud was fully and fairly litigated and essential to the Final Judgment. To do so would simply be unfair.[7]

By applying collateral estoppel, the entire Final Judgment becomes a nondischargeable obligation. This result not only bars the Debtors from attempting to convince this Court, through adducing testimony and introducing exhibits at a trial, that the entire Final Judgment is dischargeable; it also bars them from attempting to convince the Court that at least some portion of the Final Judgment is dischargeable (on the grounds that at least some portion of the damages resulted from their unconscionable actions under § 17.50 of the DTPA rather than from their fraudulent conduct under § 17.46(b)(5), (7) and (24) of the DTPA). To the extent that this result seems unfair, this Court concludes that it would be much more unfair to spend more time and attorney's fees essentially retrying the entire dispute. Indeed, this Court believes that it would be extremely difficult, if not impossible, to find that a portion of the Final Judgment is due to unconscionable actions and a portion of the Final Judgment is due to fraudulent conduct. Fraudulent behavior and unconscionable behavior are so inextricably intertwined that it would be

---

[7] Indeed the unfairness of doing so would be even more pronounced given that the jury not only found that the Debtors committed fraud under three separate provisions of § 17.46(b) of the DTPA (i.e. the three subquestions under Question No. 1), but also found that they committed fraud in their answers to Question No. 4 and Question No. 5.

an effort in futility to attempt to apportion a certain amount of damages to just one and the remaining amount of damages to the other.

Stated differently, the situation here is wholly unlike the situation in *Schwager*. There, the jury was asked in a single question to award damages for either breach of fiduciary duty or breach of the partnership agreement. *Schwager*, 121 F.3d at 183. The Fifth Circuit reversed the district court's affirmance of the bankruptcy court's granting summary judgment based upon collateral estoppel. The Fifth Circuit then remanded the dispute, requiring the bankruptcy court to make specific, independent factual findings as to how much of the damages were due to the debtor's defalcation while acting in a fiduciary capacity (which would be a nondischargeable debt under § 523(a)(4)) and how much of the damages were due to the debtor's breach of the partnership agreement (which would be a dischargeable debt). The act of defalcation while in a fiduciary capacity and the act of breaching a partnership agreement are not so intertwined so as to render impossible apportioning damages; whereas fraudulent behavior and unconscionable behavior are tied to the hip and cannot be easily separated.

In sum, because collateral estoppel applies in this instance, there is no genuine dispute as to any material fact. This Court finds that the jury's answers in the State Court Lawsuit satisfy all of the elements of § 523(a)(2)(A), and that therefore the Final Judgment is a nondischargeable obligation.

### 3. The Affidavit Evidence of the Debtors Does Not Overcome the Application of Collateral Estoppel

The Debtors attempt to create a genuine dispute of a material fact by stating in their respective affidavits that "I did not intend to mislead or falsify any information regarding the sale of the Property to the Gilberts." Their efforts fail because the jury, in answering Question No. 1, expressly found that they did engage in false, misleading, or deceptive acts with respect to the

characteristics and quality of the House. The principle of collateral estoppel bars relitigation of any factual issues that were fully and fairly litigated in prior litigation between the parties. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). Here, there was a lengthy trial in state court and the jury expressly found that the Debtors had engaged in providing false, misleading, or deceptive information regarding the House to the Plaintiffs. Therefore, the Debtors are now estopped from testifying that they did not intend to mislead or falsify any information about the House.

Chau also attempts to create a genuine dispute on a material fact by stating in her affidavit that "I do not speak or read the English language fluently and must rely on others to interpret for [me] and I did so rely on the real estate broker when I completed the disclosure requirements on the sale of the Property to the Gilberts." Thus, Chau wants this Court to hold a trial in an effort to convince this Court that because she does not speak or read the English language fluently, she could not have possibly have provided false, misleading or deceptive information regarding the House to the Plaintiffs—and therefore none of her conduct falls within the behavior encompassed by § 523(a)(2)(A), which in turn would mean that as to her, the Final Judgment would be a dischargeable debt.

Once again, this effort will not succeed. The principle of collateral estoppel "bars relitigation of any factual issue that was actually decided in previous litigation…[A]n issue may be 'actually' decided even if it is not *explicitly* decided, for it may have constituted, logically or practically a necessary component of the decision reached." *Dennis v. Rhode Island Hospital Trust National Bank*, 744 F.2d 893, 899 (1st Cir. 1984); *See also Clark v. Bear Sterns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992) ("When the issue for which preclusion is sought is the only rational one the fact finder could have found then that issue is considered foreclosed, even if

no explicit finding of that issue has been made."). Here, the jury expressly found that Chau, knowingly and intentionally, engaged in false, misleading or deceptive acts or practices upon which the Plaintiffs relied in purchasing the House. Moreover, the jury expressly found that the real estate broker (upon whom Chau claims she completely relied) did **not** engage in any false, misleading or deceptive acts and practices. Thus, for the jury to have made its findings about Chau's fraudulent conduct after a week-long trial of testimony, the only rational conclusion is that the jury impliedly found that Chau is sufficiently fluent in English to have engaged in such conduct. Thus, she is now estopped from contending that she not sufficiently fluent in English.

### III.    Conclusion

As already noted, Comment i to the Restatement emphasizes that barring collateral estoppel due to alternative determinations by the court of first instance is ultimately an issue of fairness.  Here, it would be extremely unfair to preclude the application of collateral estoppel. The Debtors demanded, and received, a jury trial in state court; a full and complete evidentiary trial was held where all parties were represented by counsel; numerous issues were submitted to the jury; and those issues that the jury answered were all in favor of the Plaintiffs, including issues regarding § 17.46(b)(5), (7), and (24) of the DTPA, all of which, together with the jury's answers to other issues, satisfy the requisite elements for fraud under § 523(a)(2)(A).

This Court acknowledges that the jury also affirmatively answered the issue regarding § 17.50(a)(3) of the DTPA, and that the unconscionable conduct under this statute does not satisfy the requisite fraud under § 523(a)(2)(A).  However, the jury also answered several other issues expressly finding that the Debtors committed fraud, and these answers satisfy the elements of § 523(a)(2)(A). The jury affirmatively answered the three issues under § 17.46 of the DTPA (i.e. Question No. 1), plus the "common fraud" issue in Question No. 4, and the "statutory fraud"

issue in Question No. 5. In sum, the jury unequivocally found that the Debtors' conduct was fraudulent, with all of the jury's findings, except one (the unconscionable finding), easily satisfying the elements of § 523(a)(2)(A).  It would now be extremely odd, not to mention blatantly unfair, to afford the Debtors the opportunity to convince this Court that the Final Judgment arose entirely from their unconscionable conduct and that contrary to what the jury found, they really committed no fraud at all.  Indeed, to now afford the Debtors an evidentiary trial in this Court would undermine collateral estoppel's dual purpose of protecting litigants from relitigating an identical issue and promoting judicial economy.

In sum, there is no genuine issue of material fact remaining for trial.  The jury in the State Court Lawsuit made all of the determinations necessary to satisfy the elements of § 523(a)(2)(A). The Debtors' argument that this Court must hold a trial so that they can convince the Court that the Final Judgment is due entirely to unconscionable conduct—therefore rendering this obligation dischargeable—is not persuasive. This Court is simply unwilling to hold a trial and reach such a conclusion because to do so would be abject rejection of the rigorous consideration that the jury gave to all of the issues in the State Court Lawsuit.

For all of these reasons, this Court, although denying the Plaintiffs' motion for summary judgment on their § 523(a)(6) claim, grants the Plaintiffs' motion for summary judgment with respect to the claim that the Final Judgment is nondischargeable under § 523(a)(2)(A).  An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED the 30th day of October 2015.

**Jeff Bohm**
**United States Bankruptcy Judge**